IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| EVA NADIA VARGAS PALACIOS, | § § § | |
| Petitioner, | § § | |
| v. | § § | CAUSE NO. EP-25-CV-552-KC |
| TODD LYONS et al., | § § § | |
| Respondents. | § § | |

# ORDER

On this day, the Court considered Eva Nadia Vargas Palacios' Petition for a Writ of Habeas Corpus ("Petition"), ECF No. 1. For the following reasons, the petition is **GRANTED IN PART**.

I.   BACKGROUND

This case involves Vargas Palacios' challenge to Respondents' decision to detain her in immigration custody without a bond hearing. The following facts are derived from the allegations in the Petition, the Response, ECF No. 8, and documentary evidence submitted by the parties.

   A.   Arrival in the United States & Immigration Proceedings

Vargas Palacios is a Guatemalan citizen who entered the United States in 1997 and has lived here since. Pet. ¶¶ 17, 19. Her nineteen-year-old son is a U.S. Citizen. *Id.* In September 2025, Vargas Palacios was taken into custody by Immigration and Customs Enforcement ("ICE") after a traffic stop in Florida. *Id.* ¶ 17. She is currently detained at the ERO El Paso Camp East Montana facility in El Paso, Texas. *Id.* ¶ 1. In 2024, Vargas Palacios filed applications for immigration relief with USCIS, which remain pending. *Id.* ¶ 18; Pet. Ex. 2, ECF

No. 7-2; Pet. Ex. 3, ECF No. 7-3.  In the meantime, she has employment authorization.  Pet. Ex. 1, ECF No. 7-1.

Vargas Palacios has not been given a bond hearing and claims that she will not receive one without this Court's intervention.  *Id.* ¶¶ 18, 47–48.  On November 10, 2025, she was issued a Notice to Appear.  *Id.* ¶ 17.  Vargas Palacios has a scheduled master calendar hearing before an immigration judge on December 17, 2025.  Resp. 2.

**B.     Procedural History**

On November 14, 2025, Vargas Palacios filed a Petition for a Writ of Habeas Corpus, asking the Court to order her release, or alternatively, order a bond hearing before an immigration judge.  *Id.* at 12.  Concurrently, Vargas Palacios filed a Motion, ECF No. 2, requesting a Temporary Restraining Order ("TRO") requiring a bond hearing before an immigration judge within seven days.  Mot. 19.  The Court denied the motion, but ordered Respondents to show cause why the Petition should not be granted.  Nov. 17, 2025, Order 4, ECF No. 3.  Respondents filed their Response on December 1.

To the extent there are any factual disputes, the Court resolves them in Respondents' favor.  Therefore, it is unnecessary to hold a hearing.  *See Tijerina v. Thornburgh*, 884 F.2d 861, 866 (5th Cir. 1989) (citations omitted) (finding that although 28 U.S.C. § 2243 requires the court to "summarily hear and determine the facts," the court need not hold an evidentiary hearing "[w]here the [habeas] petitioner raises only questions of law, or questions regarding the legal implications of undisputed facts").

## II. DISCUSSION

In her Petition, Vargas Palacios argues that her detention violates (1) the Immigration and Nationality Act ("INA") and associated regulations, and (2) her right to due process under the Fifth Amendment. Pet. ¶¶ 50–56.

Respondents make three main arguments in opposition: (1) the Court lacks subject matter jurisdiction; (2) Vargas Palacios is subject to mandatory detention without a bond hearing under 8 U.S.C. § 1225(b); and (3) Vargas Palacios' as applied due process challenge fails. Resp. 1.

This Court recently decided several petitions for writs of habeas corpus brought by immigration detainees challenging their mandatory detention without a bond hearing under § 1225(b). *See, e.g.*, *Martinez v. Noem* ("*Martinez I*"), No. 3:25-cv-430-KC, 2025 WL 2965859, at *2 (W.D. Tex. Oct. 21, 2025); *Santiago v. Noem*, No. 3:25-cv-361-KC, 2025 WL 2792588, at *3 (W.D. Tex. Oct. 2, 2025); *Lopez-Arevelo v. Ripa*, --- F. Supp. 3d ----, 2025 WL 2691828, at *5 (W.D. Tex. Sept. 22, 2025). Respondents rely on many of the same arguments that this Court has already addressed and rejected. Where the arguments retread old ground, the Court need not repeat its analysis, especially where that analysis is consistent with "the overwhelming majority" of courts to consider these issues in recent months. *See Buenrostro-Mendez v. Bondi*, No. 25-cv-3726, 2025 WL 2886346, at *3 (S.D. Tex. Oct. 7, 2025).

### A. Jurisdiction

Respondents argue that the Court is stripped of jurisdiction by 8 U.S.C. §§ 1225(b)(4), 1226(e), 1252(g), and 1252(b)(9). Resp. 1, 9–10. The Court already rejected essentially the same arguments. *See Erazo Rojas v. Noem,* No. 3:25-cv-443-KC, 2025 WL 3038262, at *2 (W.D. Tex. Oct. 30, 2025) (rejecting § 1225(b)(4) arguments); *Santiago*, 2025 WL 2792588, at *3–5 (rejecting §§ 1252(g) and 1252(b)(9) arguments); *Lopez-Arevelo*, 2025 WL 2691828, at

3

\*4–5 (rejecting §§ 1252(g) and 1226(e) arguments).  In their briefing, Respondents fail to distinguish those prior jurisdictional analyses.  Resp. 9–10.

Therefore, the Court finds that it has jurisdiction to consider Vargas Palacios' challenge to her detention.

### B.   Statutory Interpretation

Next, the parties debate the merits of the Government's new and expansive interpretation of mandatory detention under 8 U.S.C. § 1225(b) and whether Vargas Palacios falls within it.  Pet. ¶¶ 25–43; Resp. 3–9.  Recently, courts across the country have held that this interpretation is either incorrect or likely incorrect.  *See Buenrostro-Mendez*, 2025 WL 2886346, at \*3 (noting that "almost every district court to consider this issue" has rejected the Government's new interpretation); *Lopez-Campos v. Raycraft*, --- F. Supp. 3d ----, 2025 WL 2496379, at \*8 n.5 (E.D. Mich. Aug. 29, 2025) (collecting twelve such decisions).

The Court does not reach the statutory interpretation question because, assuming without finding that the Government's new interpretation is correct, Vargas Palacios is entitled to due process and succeeds in her as-applied challenge.

### C.   Procedural Due Process

Respondents argue that Vargas Palacios "has not raised any colorable claim that mandatory detention under § 1225(b) is unconstitutional as applied to her."  Resp. 2.  They argue that, even as a matter of due process, Vargas Palacios "is not entitled to more process than what Congress provided her by statute."  *Id.* at 11.  This argument relies on an expansive reading of *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103 (2020).  The Court has already rejected such a reading and does so again here.  *See Santiago*, 2025 WL 2792588, at \*7–10; *Lopez-Arevelo*, 2025 WL 2691828, at \*7–10.

Respondents also appear to argue that Vargas Palacios is receiving sufficient due process because she is in full removal proceedings, where "constitutional protections are built in[]." Resp. 11.  However, the process Vargas Palacios has received in relation to her removal is entirely distinct from the process she has received in relation to her detention, and whether that process is sufficient under the Fifth Amendment.

"To determine whether a civil detention violates a detainee's due process rights, courts apply the three-part test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976)." *Martinez v. Noem* ("*Martinez II*"), No. 5:25-cv-1007-JKP, 2025 WL 2598379, at *2 (W.D. Tex. Sept. 8, 2025).  Those factors are: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.  "The essence of procedural due process is that a person risking a serious loss be given notice and an opportunity to be heard in a meaningful manner and at a meaningful time." *M.S.L. v. Bostock*, No. 25-cv-1204, 2025 WL 2430267, at *8 (D. Or. Aug. 21, 2025) (citing *Mathews*, 424 U.S. at 348).

1. **Private Interest**

As to the first element, "'[t]he interest in being free from physical detention' is 'the most elemental of liberty interests." *Martinez II*, 2025 WL 2598379, at *2 (quoting *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004)).  Respondents' position appears to be that Vargas Palacios does not acquire a liberty interest until her detention becomes unreasonably prolonged.  Resp. 12–13.  However, one's physical freedom is a paramount liberty interest, secured not just by

5

statute but by the Constitution. *Hamdi*, 542 U.S. at 529. This liberty interest applies to noncitizens, although to varying degrees. *Martinez v. Hyde*, --- F. Supp. 3d ----, 2025 WL 2084238, at *8 (D. Mass. July 24, 2025) (citation omitted).

Therefore, this Court has already held that noncitizens acquire a protectable liberty interest when they spend years establishing a life in the interior of the United States, regardless of their citizenship status. *Martinez I*, 2025 WL 2965859, at *4. And other district courts have done the same. *See, e.g.*, *Sanchez Alvarez v. Noem*, No. 25-cv-1090, 2025 WL 2942648, at *1, 7 (W.D. Mich. Oct. 17, 2025); *Chogllo Chafla v. Scott*, Nos. 25-cv-437, 438, 439, 2025 WL 2688541, at *1, 10 (D. Me. Sept. 22, 2025).

Vargas Palacios has been living in this country for the last twenty-eight years, so "it cannot be denied that [she] was 'already in the country.'" *See Martinez v. Hyde*, 2025 WL 2084238, at *8 (quotations omitted). She has a pending application for immigration relief and has valid employment authorization. Resp. 2; Pet. Ex. 1; Pet. Ex. 3. And she has established a life in Florida with her nineteen-year-old U.S. Citizen son. Pet. ¶ 44–45. Vargas Palacios thus has a strong interest in being free from detention. *Cf. Santiago*, 2025 WL 2792588, at *10.

Therefore, the first *Mathews* factor weighs in favor of Vargas Palacios.

### 2. Risk of Erroneous Deprivation

Under the second *Mathews* factor, the Court considers "whether the challenged procedure creates a risk of erroneous deprivation of individuals' private rights and the degree to which alternative procedures could ameliorate these risks." *Martinez II*, 2025 WL 2598379, at *3 (quoting *Gunaydin v. Trump*, 784 F. Supp. 3d 1175, 1187 (D. Minn. May 21, 2025)).

Here, detaining Vargas Palacios without holding a bond hearing creates a substantial risk that she may be erroneously deprived of her liberty. Without an individualized determination, it

cannot be said that detention is warranted in his case. This risk can be easily ameliorated through a bond hearing. Indeed, agency decisionmakers regularly "conduct[] individualized custody determinations . . . consider[ing] flight risk and dangerousness." *Velesaca v. Decker*, 458 F. Supp. 3d 224, 242 (S.D.N.Y. 2020) (citation omitted); *see also* 8 C.F.R. §§ 236.1(c)(8), 1003.19(h)(3). Under "decades of DHS's own practices" prior to 2025, noncitizens "who entered without inspection" and were later arrested, just like Vargas Palacios, received bond hearings. *Chogllo Chafla*, 2025 WL 2688541, at *8 (citations omitted). This is precisely the type of proceeding that would give Vargas Palacios an opportunity to be heard and to receive a meaningful assessment of whether she is dangerous or likely to abscond, and it would greatly reduce the risk of an erroneous deprivation of her liberty.

Respondents appear to argue that it is better for Vargas Palacios that she is detained because her underlying relief application will be heard "more expeditiously on the detained docket than the non-detained docket." Resp. 12. But, those procedures would relate to Vargas Palacios' removal, not her detention. So, they would not ameliorate the risk that she will be erroneously deprived of her liberty while her removability is assessed.

Therefore, the second *Mathews* factor weighs in favor of Vargas Palacios.

    **3.    Government's Interest**

Respondents only identify their general interest in enforcing immigration laws as their basis for seeking continued detention without a bond hearing. *See* Resp. 2–3. But again, assuming Respondents' interpretation of the statute is correct, Vargas Palacios' constitutional interest in her liberty exists above and apart from the INA. *See A.A.R.P. v. Trump*, 605 U.S. 91, 94 (2025) ("[T]he Fifth Amendment entitles aliens to due process of law in the context of removal proceedings.") (citation omitted). Certainly, the Government has an interest in ensuring

that noncitizens appear for their removal hearings and do not pose a danger to the community. But these concerns would be squarely addressed through a bond hearing. Thus, the third *Matthews* factor also weighs in favor of Vargas Palacios.

Because all *Mathews* factors support Vargas Palacios' position, the Court finds that her detention without an individualized assessment of flight risk and dangerousness deprives her of her constitutional right to procedural due process under the Fifth Amendment of the United States Constitution. Thus, she is entitled to a bond hearing. *See, e.g., Lopez-Arevelo*, 2025 WL 2691828, at *13.

### D. Scope of Relief

A majority of courts, including this one, have determined that the appropriate relief for an immigration detainee held in violation of due process is to require a bond hearing before an IJ.[1] *Id.* at *12 (collecting cases). The weight of authority also holds that when ordering a bond hearing as a habeas remedy, the burden of proof should be on the Government to prove by clear and convincing evidence that the detainee poses a danger or flight risk. *Id.* at *13 (collecting cases); *Velasco Lopez v. Decker*, 978 F.3d 842, 855 n.14 (2d Cir. 2010) (citations omitted). Many courts have also found it appropriate to give the Government a short window in which to complete the bond hearing, or else release the petitioner. *See, e.g.*, *Velasquez Salazar v. Dedos*, No. 25-cv-835, 2025 WL 2676729, at *9 (D.N.M. Sept. 17, 2025) (collecting cases). The Court follows this consensus and orders the same remedy here.

---

[1] Respondents argue that "the only relief available to Petitioner through habeas is release from custody." Resp. 3. The Court has already rejected this argument, *Lala Barros v. Noem*, No. 3:25-cv-488-KC, 2025 WL 3154059, at *5 n.1 (W.D. Tex. Nov. 10, 2025), and does so here for the same reasons.

### III. CONCLUSION

For the foregoing reasons, the Petition for Writ of Habeas Corpus, ECF No. 1, is **GRANTED IN PART**. The Court **ORDERS** that, <u>on or before December 10, 2025</u>, Respondents shall either: (1) provide Vargas Palacios with a bond hearing before an IJ, at which the Government shall bear the burden of justifying, by clear and convincing evidence of dangerousness or flight risk, her continued detention; or (2) release Vargas Palacios from custody, under reasonable conditions of supervision.

**IT IS FURTHER ORDERED** that, <u>on or before December 10, 2025</u>, Respondents shall **FILE** notice informing the Court whether Vargas Palacios has been released from custody. If Vargas Palacios has not been released from custody, Respondents shall inform the Court whether and when a bond hearing was held in accordance with the preceding paragraph. Respondents shall further inform the Court, in detail, of the reasons for the IJ's decision.

<u>**There will be no extensions of the December 10, 2025, deadlines.**</u>

**SO ORDERED**.

**SIGNED** this 3rd day of December, 2025.

_____
KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE